IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                          PLAINTIFF,

v.                              CIVIL ACTION NO. 1:18-CV- 348-LG-RHW

$7,605.70 UNITED STATES CURRENCY,           DEFENDANT PROPERTY.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through its United States Attorney and the undersigned Assistant U.S. Attorney for the Southern District of Mississippi, brings this Verified Complaint for Forfeiture *in rem,* in accordance with Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions and the Federal Rules of Civil Procedure, and alleges as follows:

## NATURE OF THE ACTION

1. This is an action by the United States of America seeking forfeiture of $7,605.70 in United States Currency (the "defendant property") seized from Wells Fargo Bank Account Number 5813228458, held in the name of Saeed Tariq. The defendant property is subject to forfeiture under 18 U.S.C. § 981(a)(1) because the defendant property is involved in transactions and attempted transactions in violation of 18 U.S.C. § 1960 (operating an unlicensed money transmitting business).

## THE DEFENDANT *IN REM*

2. The defendant property consists of $7,605.70 in United States Currency, which was seized by the U.S. Department of Homeland Security, Homeland Security Investigations on October 2, 2017, from the Wells Fargo Bank branch located at 375 Courthouse Road, Gulfport,

Mississippi, within the Southern District of Mississippi, Southern Division. The defendant property is currently in the custody of the U.S. Customs and Border Protection.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under 28 U.S.C. § 1355.

4. Venue is proper in the Southern Division of the Southern District of Mississippi, pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a), because the acts and/or omissions giving rise to the forfeiture occurred in this District and, pursuant to 28 U.S.C. § 1395(b), because the defendant property was found and seized in this District.

## BASIS FOR FORFEITURE

5. The defendant property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because the defendant property is involved in or constitutes the proceeds of transactions and attempted transactions in violation of 18 U.S.C. § 1960 (prohibition of unlicensed money transmitting businesses).

6. Title 18, United States Code, Section 981(a)(1)(A), makes subject to forfeiture to the United States any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960, or any property traceable to such property.

7. Title 18, United States Code, Section 981(f), provides that "[a]ll right, title, and interest in property described in [18 U.S.C. § 981(a)] shall vest in the United States upon commission of the act giving rise to forfeiture under this section."

## FACTS AND CIRCUMSTANCES

8. Tariq, a resident of Norcross, Georgia, exchanged money deposited into the above-referenced bank account for Bitcoin, in an undercover operation with an HSI agent in Gulfport, Mississippi. This transfer was conducted via the Internet, to an online Bitcoin wallet held by HSI on the Paxful.com website, which is located in Delaware, and was done as part of Tariq's ongoing and unregistered money transmitting business. In so doing, Tariq knowingly conducted, controlled, managed, supervised, directed, and owned all or part of a money transmitting business, which affected interstate commerce in some manner or degree, while failing to comply with the money transmitting business registration requirements under 31 U.S.C. § 5330, or regulations prescribed under that section.

9. A detailed account of the facts and circumstances of the search and seizure at issue and the basis for this instant forfeiture action is set out in the Declaration of HSI Special Agent Wes Anthony, attached hereto as Exhibit "A" and fully incorporated herein by reference.

## FIRST CLAIM FOR RELIEF
### (18 U.S.C. § 981(a)(1)(A))

10. Paragraphs 1 through 9 above are incorporated by reference as if fully set forth herein.

11. The defendant property constitutes money that was involved in or intended to be used to facilitate one or more violations of 18 U.S.C. § 1960, and is therefore forfeitable to the United States of America under 18 U.S.C. § 981(a)(1)(A).

Plaintiff United States of America requests that

(a) the Court find that the United States has stated sufficiently detailed facts to support a reasonable belief that it will be able to meet its burden at trial that the defendant property is forfeitable to the United States of America under 18 U.S.C. § 981(a)(1)(A);

(b) under 18 U.S.C. § 981(b)(2)(A) and Supplemental Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Clerk of Court for the U.S. District Court for the Southern District of Mississippi issue an Arrest Warrant *in rem* for the arrest and seizure of the defendant property based on this verified complaint, which the United States of America will execute upon the defendant property located in the custody of CBP, to bring the defendant property within the jurisdiction of the Court for purposes of this statutory forfeiture action;

(c) process issue to enforce the forfeiture of the defendant property;

(d) notice of this action be given to the defendant property under Supplemental Rule G(3)(b), and to all persons and entities known or thought to have an interest in the defendant property to appear and show cause why the forfeiture should not be decreed;

(e) the Court decree that forfeiture of the defendant property to the United States of America is confirmed, enforced, and ordered;

(f) the Court award the United States of America its costs and disbursements in this action and for disposition according to law; and

(g) the Court grant the United States such further relief as this Court may deem just and proper.

Respectfully submitted, this the 1st day of November, 2018.

                                  UNITED STATES OF AMERICA
                                  D. MICHAEL HURST, JR.
                                  United States Attorney

By:    */s/ Marc A. Perez*
          MARC A. PEREZ
          Assistant United States Attorney
          WA Bar Number 33907
          501 E. Court Street, Suite 4.430
          Jackson, Mississippi 39201
          (601) 965-4480 Voice
          (601) 965-4409 Fax
          Email: Marc.Perez@usdoj.gov

## VERIFICATION

I, Wes Anthony, hereby verify and declare under penalty of perjury, that I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations (HSI), that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint for Forfeiture *In Rem* are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States of America, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as an HSI Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated this the 31st day of October, 2018.

_____
WES ANTHONY
Special Agent
Homeland Security Investigations

State of Mississippi
County of HARRISON

Sworn to and subscribed before me, this day the 1st day of November, 2018.

_____
NOTARY PUBLIC

My commission expires: 7-27-2021

6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                                                    PLAINTIFF,

v.                                    CIVIL ACTION NO. 1:18-CV- 348-LG-RHW

$7,605.70 UNITED STATES CURRENCY,                               DEFENDANT PROPERTY.

### DECLARATION IN SUPPORT OF VERIFIED COMPLAINT

Under 28 U.S.C. § 1746, I, Wes Anthony, Special Agent, U.S. Department of Homeland Security, Homeland Security Investigations, make the following unsworn declaration, under the penalty of perjury, pertinent to the above-styled and numbered case:

### PURPOSE

1. This declaration is made in support of a Verified Civil Complaint for forfeiture of the contents of a personal bank account, namely, **$7,605.70 in United States Currency, seized from Wells Fargo Bank Account Number 5813228458, and, at the time of seizure, held in the name of Saeed Tariq** ("the **Subject Funds**"). I submit that there is probable cause to believe that the **Subject Funds** were involved in transactions and attempted transactions in violation of 18 U.S.C. § 1960, and that the **Subject Funds** are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A).

### INTRODUCTION AND AGENT BACKGROUND

2. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), assigned to the HSI office in Gulfport, Mississippi. I have been a Special Agent since August 2003.

3. I am authorized to conduct investigations of offenses against the United States, conduct searches without warrant at the border or its functional equivalent, conduct inquiries

**EXHIBIT A**

related to alienage and removability, execute and serve search and arrest warrants, serve subpoenas and summonses, administer oaths, make arrests without warrant, require and receive information relating to offenses, and bear firearms.

4. I have conducted investigations relating to financial crimes and vulnerabilities related to the United States financial system, and, as a graduate of the HSI Asset Forfeiture and Financial Investigations (AFFI) training program (2005), I possess specialized training in investigating unregistered and unlicensed money service businesses in violation of 18 U.S.C. § 1960, which makes it unlawful to operate an unlicensed money transmitting business, as defined by 18 U.S.C. § 1960(b).

## RELEVANT DEFINITIONS AND STATUTES

5. A money service business is a "Financial Institution" per 31 C.F.R. § 1010.100(t).

6. A "money transmitter," which is a money service business pursuant to 31 C.F.R. § 1010.100(ff)(5)(i), must register with the U.S. Treasury Department and the Financial Crimes Enforcement Network (FinCEN) pursuant to 31 U.S.C. § 5330(a)(1). A person or entity is considered a money service business if the person or entity engages in currency exchanging, check cashing, the issuance of traveler's checks, money orders, or stored value, in excess of $1,000.00 per person, per day, in one or more transactions.

7. A money transmitter is an individual or business that engages as a business in accepting currency, or funds denominated in currency, and transmits the currency or funds, or the value of the currency or funds, by any means through a financial agency or institution, a Federal Reserve Bank or other facility of one or more Federal Reserve Banks, the Board of Governors of the Federal Reserve System, or both, or an electronic funds transfer network; or any other person engaged as a business in the transfer of funds. 31 C.F.R. § 1010.100(ff)(5).

**EXHIBIT A**

8. A money transmitter can be a money service business regardless of the dollar amount transmitted. Per public guidance provided by FinCEN, available for viewing at https://www.fincen.gov/money-services-usiness-definition, regulations state: "No activity threshold applies to the definition of money transmitter. Thus, a person who engages as a business in the transfer of funds is [a money service business] as a money transmitter, regardless of the amount of money transmission activity." Any such person must register with FinCEN as a money transmitter, therefore, regardless of the amount of money transmitted. *See also* 31 C.F.R. § 1022.380.

9. Pursuant to FinCEN guidance, identified as FIN-2013-G001, and issued on March 18, 2013, cryptocurrency (or "virtual currency"), such as Bitcoin, is a form of currency, and money transmitters offering to exchange United States currency for virtual currency (or virtual currency for United States currency) are subject to the same registration requirements as that of other money transmitters.

10. A "Financial Institution" is required to file reports on currency transactions pursuant to 31 U.S.C. § 5313(a).

11. A "Financial Institution" includes any "licensed sender of money or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system" pursuant to 31 U.S.C. § 5312(a)(2)(R).

12. A money service business can be held criminally liable for failure to register with the U.S. Treasury Department under the provisions of 18 U.S.C. § 1960.

**EXHIBIT A**

13. Title 18, United States Code, Section 1960(a), states: "Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both." Title 18, United States Code, Section 1960(b)(1), states, in part, that the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree. Title 18, United States Code, Section 1960(b)(1)(B), states, in part, that operation of a money transmitting business that fails to comply with the money transmitting business registration requirements under 31 U.S.C. § 5330, or regulations prescribed under such section, is in violation of the statute.

14. Title 31, United States Code, Section 5330(a)(1)(B), in addressing the registration of money transmitting businesses, states, in part, that "[a]ny person who owns or controls a money transmitting business shall register the business (whether or not the business is licensed as a money transmitting business in any State) with the Secretary of the Treasury not later than the end of the 180-day period beginning on … the date on which the business was established."

15. Title 18, United States Code, Section 1960(b)(2), states that the term "money transmitting" includes transferring funds on behalf of the public by any and all means, including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier.

## PROBABLE CAUSE

16. The facts in this declaration come from my personal observations, training, and experience, and information obtained from other agents and witnesses. This declaration is intended to show that there is sufficient cause to support a civil complaint for forfeiture and does not set forth all of my knowledge about this matter.

**EXHIBIT A**

17. Because this declaration is being submitted to establish sufficient cause to support a civil complaint for forfeiture, it does not include all the facts that have come to light during the course of the investigation. When the contents of documents and statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

18. I have a reasonable belief that the United States can demonstrate, by a preponderance of the evidence, that:

   a. Tariq conducted, controlled, managed, supervised, directed, or owned

   b. All or Part of an "unlicensed money transmitting business"; and

   c. Did so knowingly.

Therefore, I have a reasonable belief that the **Subject Funds** were in an account which Tariq used to facilitate a crime, that is, a violation of 18 U.S.C. § 1960. As such, the funds in the bank account are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), which makes subject to forfeiture to the United States any property, real or personal, involved in a violation (or attempted violation, under § 981(a)(1)(A)) of § 1956, 1957, or 1960, or any property traceable to such property. The property "involved in" a violation of 18 U.S.C. § 1960 includes monies used to carry on the operation of the unlicensed money transmitting business. As the **Subject Funds** were involved in the operation of a money transmitting business—which was not registered as required by 31 U.S.C. § 5330, and thus in violation of 18 U.S.C. § 1960, they are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

## VIRTUAL CURRENCY

19. Bitcoin is a "cryptocurrency," in that it takes no tangible form, and does not relate to any issuing government entity. Bitcoin is decentralized, and is electronically traded via the Internet, where it can be used to purchase goods and services.

**EXHIBIT A**

20. According to open source research, Bitcoin was invented by a computer programmer, or group of programmers, under the name Satoshi Nakamoto, and entered circulation in 2009. As of February 2015, more than 100,000 merchants and vendors accepted Bitcoin as payment. Bitcoin can also be held as an investment. According to research produced by Cambridge University in 2017, there are 2.9 to 5.8 million unique users using a cryptocurrency wallet, most of them using Bitcoin.

21. Bitcoin, in and of itself, is not illegal. Due to the anonymity associated with the buying and selling of Bitcoin, however, the cryptocurrency lends itself to use as an anonymous means of exchange, which makes it appealing to criminals. To obtain Bitcoin anonymously, a user must create an online "Bitcoin wallet," which can be accomplished by creating a Bitcoin trading account on any of the many on-line Bitcoin exchanges. The Bitcoin wallet is typically a 34 character alphanumeric account identifier.

22. In this investigation, I created an anonymous Bitcoin wallet by creating an account on www.Paxful.com. All I needed to open the account, and thus obtain a Bitcoin wallet, was a valid email address, also readily and anonymously obtainable via any online email provider such as Yahoo! or Gmail. No identification, or verification of personal information, was required. After the Bitcoin wallet is created, as in this investigation, a user can anonymously purchase Bitcoin, which is then electronically placed in his wallet for use as a means of exchange or monetary tender.

23. The "Dark Web," also known as the "Darknet," is a part of the Internet that is only accessible via the use of specialized software. The Dark Web's encryption technology routes users' data through a large number of intermediate servers, which protects the users' identity and guarantees anonymity. Although using the Dark Web is

**EXHIBIT A**

not illegal, as it permits users to talk and share files confidentially, it is often used for illegal activity, such as the trade of illegal merchandise.

24. Illegal goods and services are available for sale all over the world via Dark Web marketplaces. Because of the illegal nature of the goods and services offered via the Dark Web, consumers use Bitcoin to effect purchases due to the anonymous protection it provides both the commodity seller and buyer.

25. Paxful.com, a legitimate website open to the public, provides a format where prospective Bitcoin buyers and sellers of Bitcoin can connect to exchange various forms of money for Bitcoin. Paxful.com allows buyers of Bitcoin to create a virtual wallet to hold the Bitcoin they purchase and to exchange many forms of value, including cash, credit and debit cards, retail store gift cards, Paypal, wire transfer, and Western Union.

26. This investigation identified Tariq as an independent Bitcoin vendor offering Bitcoins for sale under the Paxful.com screen name "internetdeal217."

## THE INVESTIGATION

27. On April 13, 2017, I assisted in the execution of a Mississippi state search warrant at the residence of M.C., in Biloxi, Mississippi. At approximately 8:30 p.m., I met M.C. at his residence, advised him that a search warrant had been issued for his residence, and that he was not under arrest. M.C. consented to be interviewed.

28. After I told M.C. that a federal investigation had identified his Bitcoin account as being used to purchase narcotics online, M.C. admitted that he had used online Bitcoin wallet to purchase narcotics on multiple occasions via a website located on the Dark Web. M.C.'s purchased narcotics arrived in the mail at his residence.

**EXHIBIT A**

29. M.C. explained he purchased Bitcoin via the Paxful website by making on-line contact with prospective Bitcoin sellers, and then effecting anonymous cash deposits into different Wells Fargo bank accounts as directed by each specific contacted seller. When selecting a prospective Bitcoin seller based on his personal criteria (amount of Bitcoin to be purchased; mode of purchase; form of legal tender or value exchange), M.C. stated that he took into consideration the fees assessed by the seller, along with the valuation of the Bitcoin offered for sale. M.C. also alluded to viewable positive feedback statistics the seller had previously received from other buyers as a factor in his selection of a Bitcoin seller. Specifically, M.C. contemplated the amount "on the dollar" that the Bitcoin seller charged (i.e., a seller may arbitrarily apply only 66 cents of each dollar paid toward the purchase of any amount of Bitcoin, thus keeping 34 cents in commission for each dollar spent). In addition, M.C. considered that even though the current market price of one Bitcoin may be, for example, $7,000.00 at that particular time, some sellers artificially inflate the exchange rate of the Bitcoin they offer for sale, thus increasing their profits even more. Thus, M.C. explained that he tried to conduct transactions with Bitcoin sellers who charged the most modest commissions and did not over-inflate the price of the Bitcoin being offered for sale. M.C. advised that, after selecting a Bitcoin seller and reaching a purchase agreement, he would quickly deposit cash into a Wells Fargo bank account specified by the Bitcoin seller at a local Wells Fargo branch. Thereafter, a commensurate amount of Bitcoin (based on the current exchange rate), less the Bitcoin seller's commission, was added to his virtual Bitcoin wallet. Using the Bitcoin in his virtual wallet, M.C. anonymously purchased narcotics on the Dark Web.

30. On September 29, 2017, I accessed a covert Paxful.com Bitcoin account, which had been created by an undercover (UC) HSI special agent, and held a zero balance. I searched the

**EXHIBIT A**

Paxful.com website for Bitcoin vendors who advertised Bitcoin currency exchange services via the deposit of U.S. Currency into existing Wells Fargo bank accounts.

31. At around 10:30 a.m., a Bitcoin seller using screen name internetdeal217 was identified.[1] The profile information for internetdeal217 indicated that the Paxful.com account had been created in February 2017. The account appeared to have 136 positive feedback reports stemming from previous transactions and had completed approximately 201 transactions through exchanges with 105 different customer accounts. The internetdeal217 account advertised the owner's capability to exchange U.S. currency into Bitcoin virtual currency in amounts between $2,000 and $5,000. Additional conditions of the currency exchange indicated that internetdeal217 took a 13% commission, in that each U.S. dollar paid by the Bitcoin buyer resulted in the purchase of $0.87 in Bitcoin. Furthermore, internetdeal217 valued the Bitcoin he offered at $4,814.87. Because the market price on September 29, 2017 was $4,187.24 per Bitcoin, internetdeal217's valuation provided him an additional $627.63 per Bitcoin, an unfavorable exchange rate to the Bitcoin buyer.

32. Bitcoin seller internetdeal217 stated that customers must provide photographic evidence of the bank deposit receipt, evidencing the deposit of U.S. currency into the bank account provided by internetdeal217, and that internetdeal217 only accepted cash as payment in exchange for Bitcoin. At no time during the entire transaction did internetdeal217 ask for any identifying information, an image of any identification document, or the location of the Bitcoin buyer. In

---

[1] This account, my investigation uncovered, is owned by Saeed Tariq, who, I've discovered, has opened multiple other accounts on Bitcoin exchanges, starting as early as October 2015. Some of these accounts have been closed by the exchanges due to their concern that Tariq was operating as an unregistered money service business. At least one of the exchanges gave guidance to Tariq that since he was using his account with the exchange as a business, he needed to change to an institutional account, retire his personal account, and register with FinCEN.

**EXHIBIT A**

accordance with the provisions found in 31 C.F.R. Chapter X, relating to recordkeeping requirements, a financial institution must maintain a record of the information it obtained under its procedures for implementation of its Customer Identification Program. The types of information to be maintained include the identifying information of the customer (e.g., name, date of birth, address, and taxpayer identification number).

33. At approximately 10:40 a.m., via Paxful.com, I offered to exchange U.S. dollars for Bitcoin with internetdeal217. I offered to deposit $3,000.00 into internetdeal217's Wells Fargo bank account in exchange for $2,616.03 worth of Bitcoin virtual currency. This exchange would result in the fractional purchase of 0.62313967 of one Bitcoin, and a $383.97 profit for internetdeal217 as a result of his 13% commission and above-market value Bitcoin price.

34. After my offer, an instant message pop-up box appeared, which stated that, pursuant to the terms of the currency exchange, I, as the Bitcoin buyer, had 45 minutes to make payment before the trade expired.

35. Instantaneously, a message from internetdeal217 appeared, simply stating "5813228458." I understood this number to represent the Wells Fargo bank account to which a cash deposit would be made.

36. I messaged back, "Hello." At this time, internetdeal217 then responded by saying, "hi"; "tariq"; and "georgia," in three separate messages.

37. Upon receipt of the bank account information, an HSI special agent, operating in a undercover role, traveled to the Wells Fargo branch located at 375 Courthouse Road, Gulfport, Mississippi, 39507, which is located within the Southern District of Mississippi. At 10:53 a.m., the undercover special agent deposited $3,000 in U.S. currency into the above-mentioned Wells Fargo account, and received a paper deposit receipt.

**EXHIBIT A**

38. The internetdeal2017 transaction instructions read as follows (*transcribed verbatim, including abbreviations and punctuation errors*):

> Trade instructions by vendor, please read make cash deposit in WELLS FARGO BANK load receipt here,Please write no refund on receipt,and write your user id on receipt thnx save time open trade in bank

39. At approximately 11:07 a.m., I wrote the language on the receipt as instructed by internetdeal217, and uploaded a picture of the receipt to the instant message thread. I then marked the payment as completed. This prompted internetdeal217 to verify the payment. At 11:08 a.m., internetdeal217 stated via instant message, "good thnx."

40. At that time, I received an automated message via Paxful.com that $2,610.22 in Bitcoin value had been released and deposited into the undercover HSI Bitcoin wallet.

41. Review of the undercover wallet's Bitcoin balance revealed that it contained a fractional amount (0.62233967) of one Bitcoin.

42. This transmission of monetary value affected interstate commerce. The undercover HSI special agent made an anonymous cash deposit into Tariq's Wells Fargo account in Gulfport, Mississippi. The Bitcoin purchased from internetdeal217 was transferred via the Internet, *i.e.,* a means or facility of interstate commerce, to another location, namely the online Bitcoin wallet held by HSI on the Paxful.com website, which is located in Delaware.

43. In researching internetdeal217's (Tariq's) identity, I was able to fully identify Tariq as Saeed Ahmed Tariq of Norcross, Georgia.

44. Multiple search criteria related to Tariq, such as his known address, personal identifying information, identified business interests, and place of residence, were used to search a comprehensive database of registered money service businesses maintained by the FinCEN. All

**EXHIBIT A**

database queries met with negative results for any evidence that Tariq was registered with the U.S. Department of the Treasury as a money service business.

45. On October 2, 2017, U.S. Magistrate Judge John C. Gargiulo signed a seizure warrant to seize the contents of Saeed Tariq's Wells Fargo Bank Account Number 5813228458. I executed the seizure warrant the same day.

46. On July 2, 2018, the U.S. Customs and Border Protection, which handles administrative forfeiture matters for HSI, received correspondence from Tariq, including a claim for the **Subject Funds** and a request that Customs and Border Protection refer the case to "the U.S. Attorney for court action." In his claim form, Tariq admitted that he had been selling Bitcoin without money service business registration, stating:

> I was selling bitcoins, without license, I should be giving warning 1st not to do business without license. I am willing to pay license fee. I want to go Gwinnett County Court, GA 30093 Lawrenceville, GA. Thanks. (*sic*)

CBP rejected Tariq's claim because he had not stated his interest in the seized $7,605.70, but gave Tariq an additional ten days to resubmit his claim.

47. On August 3, 2018, CBP received Tariq's resubmitted claim, which stated "$7605.70 Please refund this money to me after deducting a license fee, Thanks. (*sic*)" Despite Tariq's failure to state his interest in the Subject Funds, Customs and Border Protection accepted the claim and referred it to the U.S. Attorney's Office.

48. Tariq does not appear to possess a criminal history. Further, since the seizure of the **Subject Funds**, no further Bitcoin brokerage activity on his part has been identified.

## CONCLUSION

49. I believe, based on the above-listed facts and circumstances, that there are sufficiently detailed facts to support a reasonable belief that the **Subject Funds**—originally the

**EXHIBIT A**

contents of Wells Fargo Bank Account Number 5813228458, and held in the name of Saeed Tariq—were involved in transactions and attempted transactions in violation of 18 U.S.C. § 1960, and represent the proceeds of those transactions, and that the contents of that account—the defendant property, $7,605.70 United States Currency—are subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(A).

50.    I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this __1st__ day of November, 2018.

_____
Wes Anthony, Special Agent
Homeland Security Investigations
U.S. Department of Homeland Security

**EXHIBIT A**

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

1:18-cv-348-LG-RHW

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

## DEFENDANTS
$7,605.70 UNITED STATES CURRENCY

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Marc A. Perez, Assistant United States Attorney
501 East Court Street, Suite 4.430, Jackson, MS 39201, (601) 964-4480

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☒ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. § 981(a)(1)
Brief description of cause:
Forfeiture in rem for Violation of 18 U.S.C. § 1960

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____
DOCKET NUMBER _____

DATE: 11/01/2018
SIGNATURE OF ATTORNEY OF RECORD: *Marc A. Perez*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____